# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JASON FOWLER,

        Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,

        Defendant.

_____/

Case No. 1:25-cv-00778-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

Plaintiff Jason Fowler ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    FACTUAL BACKGROUND

On March 8, 2022, Plaintiff applied for SSI payments, alleging he became disabled on March 1, 2022, due to seizures; back pain; headaches; migraines; high blood pressure; high cholesterol; severe anxiety; depression; [obsessive compulsive disorder] OCD; and somatization disorder.

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.) On April 13, 2026, this case was reassigned to the undersigned. (*See* Doc. 17.)

(Administrative Record ("AR") 10, 51, 69, 108, 224–26, 257.)  Plaintiff was born in 1984 and was 37 years old on the application date.  (AR 23, 50, 68, 254, 305, 343.)  Plaintiff graduated high school and had no past relevant work.  (AR 23, 35–36.)

**A.    Relevant Evidence of Record[2]**

In February 2022, Plaintiff complained of "feeling dizzy when rising from kneeling or bent over position."  (AR 404.)  It was noted that he takes medication for headaches.  (AR 405.)  He was assessed with "intractable migraine without status migrainosus," and advised to engage in activity "as tolerated" and to continue his medication.  (AR 407.)

That next month, Plaintiff presented for a follow up appointment to review laboratory testing results.  (AR 409.) A history of head trauma was noted.  (AR 409.)  He was again assessed with "intractable migraine without status migrainosus."  (AR 412.)  In April 2022, Plaintiff underwent MRI imaging of his brain, which was normal.  (AR 412.)

In May 2022, Plaintiff presented for a behavioral health appointment.  (AR 508.)  He complained of frequent headaches and "an inability to stop thinking."  (AR 508.)  It was noted that Plaintiff "continue[d] to make arguments as to why he could not do any kind of work, including working from home (lack of transportation, computer, prior experience).  (AR 508.)

Plaintiff underwent a mental evaluation by a consulting psychiatrist in June 2022.  (AR 447–55.)  He stated, "I have headaches, my psychologist says they're somatic responses to stress."  (AR 447.)  He stated further, "The longer I am around people the more my headaches get.  My psychologist says that the more I'm exposed to physical stress the more I enter these states and the worse my tension headaches and my migraines get, and I end up having seizures."  (AR 449.)  The psychiatrist noted that Plaintiff is "independent for basic Activities of Daily Living (ADLs)."  (AR 449.)  It was noted further that he can prepare meals independently, use public transportation or a ride-share service without supervision, make change, shop at stores independently, and can shower and dress himself without assistance.  (AR 449.)

In July 2022, Plaintiff underwent an internal medicine evaluation.  (AR 459–63.)  He

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

complained of low back pain and daily, all-day headaches that "wax and wane a bit." (AR 459.) Plaintiff reported that he cooked, cleaned, shopped, performed his own daily activities without assistance, and walked and rode an exercise bike for exercise. (AR 459.) The examiner observed that the symptomology of Plaintiff's headaches "is not terribly consistent with migraines." (AR 462.)

Plaintiff presented for a Botox injection to treat his migraines in November 2022. (AR 564–68.) He reported his headache frequency is 90/90 days, and his migraine frequency is 6/90 days, with dull, stabbing pain in the occipital region radiating all over the head. (AR 564.) Plaintiff also indicated that the headaches are accompanied by jaw tension, muscle pain, and fatigue. (AR 564.) On examination, Plaintiff had grossly intact cranial nerves and normal sensation, with no nystagmus, no facial asymmetry, no focal weakness in extremities. no involuntary movements, no tremors, dysmetria or ataxia. (AR 566.) He was assessed with "chronic migraine without aura, not intractable, without status migrainosus" and "transformed migraine." (AR 566.) Plaintiff's status was listed as "stable," and he was recommended to repeat Botox treatments and continue his current medication. (AR 566.)

In January 2023, Plaintiff presented for another Botox injection, which he reported has been helping with his migraines. (AR 561.) He stated that he continues to have two to three migraines per month that cause light sensitivity and last the entire day. (AR 561.) Plaintiff reported that he tolerated his medication well without side effects. (AR 561.) He was diagnosed with "migraine, unspecified, not intractable, without status migrainosus," advised to continue his current treatment, including Botox injections, and to keep a "headache journal." (AR 563.)

That same month, Plaintiff presented for a psychotherapy session. (AR 588–89.) He reported an increase in headaches corresponding to an increase in tension in his home. (AR 588.) When asked why he was unable to work, Plaintiff "offered multiple reasons" such as lack of training or experience, lack of transportation, and no home office. (AR 588.)

In February 2023, Plaintiff received another Botox injection. (AR 558.) He reported he has migraines two to three times per month, with a pain rating of 7/10. (AR 558.) Plaintiff stated he has light and noise sensitivity with his migraines, which last about one day and are caused by stress.

(AR 558.)  He stated he tolerated his medication well without side effects.  (AR 558.)  Plaintiff was assessed with "chronic migraine without aura, intractable, with status migrainosus" and "[c]hronic intractable migraine without aura."  (AR 559.)

Plaintiff presented for a follow up appointment and Botox injections in June 2023.  (AR 549, 551.)  He reported he has been "doing well" and denied recent migraines.  (AR 549.)  He reported that he continues to have "constant headaches" but that the Botox treatments help with the severity.  (AR 549.)  He denied side effects from the treatments.  (AR 549.)  He described his headaches as constant and throbbing, occurring in the frontal, temporal, and occipital areas, and that they travel from one region to another.  (AR 549.)  He rated the pain as 10/10, and reported that the headaches are accompanied by nausea, vomiting, and dizziness, last three to five days, and are triggered by stress.  (AR 549.)  Plaintiff's physical examination showed grossly intact cranial nerves and normal sensation, with no nystagmus, no facial asymmetry, no focal weakness in extremities. no involuntary movements, no tremors, dysmetria or ataxia.  (AR 554.)  Plaintiff was diagnosed with "chronic migraine without aura, intractable, with status migrainosus" and "migraine, unspecified, not intractable, without status migrainosus."  (AR 551, 555.)

In August 2023, Plaintiff presented for another Botox injection to treat his chronic migraines.  (AR 544–48.)  He described constant and throbbing headache pain rated 10/10 with migraines five times per month lasting a couple of hours to an entire day.  (AR 544.)  Plaintiff reported that his headaches are in the frontal, temporal, and occipital regions and travel from one region to another.  (AR 544.)  They are accompanied by nausea, vomiting, visual disturbance, seizure like activity, fatigue, and sensitivity to light and sound.  (AR 544.)  On examination, Plaintiff had grossly intact cranial nerves and normal sensation, with no nystagmus, no facial asymmetry, no focal weakness in extremities. no involuntary movements, no tremors, dysmetria or ataxia.  (AR 546.)  He was assessed with "chronic migraine without aura, intractable, with status migrainosus" and "chronic intractable migraine without aura."  (AR 546.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on August 23, 2022, and again on reconsideration on December 13, 2022.  (AR 10, 101–106, 108–113.)  Consequently,

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 114–29.)

At the hearing on October 19, 2023, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions.  (AR 108–112.)  Plaintiff testified that he was unable to work due to seizures and migraine headaches.  He reported that the frequency of migraines depends on his exposure to people, but he can have up to seven migraines per month and they last three to five days.  (AR 38, 39.)  According to Plaintiff, when he gets a migraine, he is unable to do anything.  (AR 42.)  He also testified that he has had a tension headache, which he described as "constant pressure" and "physical tension" in his shoulders and neck, every day for the past 25 years.  (AR 38–39.

Plaintiff testified he currently lives with his brother and can prepare microwave meals, take Medi-Cal transport system or ride with his brother, do his own laundry, clean his own room, and do basic housework for two hours with breaks.  (AR 36–37, 42.)  A Vocational Expert ("VE") also testified at the hearing.  (AR 45–49.)

**C.    The ALJ's Decision**

In decision dated April 10, 2024, the ALJ concluded that Plaintiff was not disabled.  (AR 10–24.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 12–24.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since March 8, 2022, the alleged onset date (step one).  (AR 12.)  At step two, the ALJ found Plaintiff's following impairments to be severe: seizure disorder, degenerative disc disease, migraine without status migrainosus, anxiety disorder, panic disorder, posttraumatic stress disorder, major depressive disorder, mood disorder, somatization disorder.  (AR 12–13.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 13–15.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and applied the

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours per day, for 5 days per week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay

assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR [§] 416.967(c) except lift/carry 25 pounds frequently and 50 pounds occasionally; stand/walk for six hours out of an eight hour workday; sit for six hours out of an eight hour workday; never climb ladders or scaffolds; never work at unprotected heights or around fast moving machinery; simple <u>routine</u> tasks; and occasional contact with the general public.

(AR 15–23 (emphasis in original).) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 16.)

The ALJ determined that Plaintiff had no past relevant work (step four) but that, given his RFC, he could perform a significant number of jobs in the national economy (step five), including automobile detailer, bagger, and kitchen helper. (AR 23–24.) The ALJ ultimately concluded that Plaintiff was not disabled since March 8, 2022, the date the application was filed. (AR 24.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on February 26, 2025. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous

---

evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.      Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting his testimony regarding his subjective complaints. (Docs. 12, 15.) The Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 14.) The Court agrees with the Commissioner and will affirm the ALJ's decision.

**A.      The ALJ Properly Evaluated Plaintiff's Subjective Symptom Allegations**

### 1.      Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[4] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d

---

[4] The Court rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 14 at 4 n.2.)

1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### 2.    Analysis

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective symptom statements as "not entirely consistent with the medical evidence and other evidence in the record." (AR 16.)  In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.

Here, the Court finds that the two reasons articulated by the ALJ for discrediting Plaintiff's subjective symptom allegations are clear and convincing and supported by substantial evidence, as explained below.

#### a.    Daily activities

An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1040.  Even if the claimant experiences some difficulty or pain, his daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ made a reasonable determination based on specific, clear, and convincing evidence that Plaintiff's "activities of daily living are inconsistent with [Plaintiff's] statements concerning the alleged intensity, persistence, and limiting effects of symptoms."  (AR 17.) Specifically, the ALJ noted Plaintiff's hearing testimony that he has up to seven migraine headaches per month and, when he gets a migraine, he is "unable to do anything." (AR 16.)  The testimony, according to the ALJ, is undermined by Plaintiff's ability to "independently shower and dress self, independently prepare meals, use public transportation or a rideshare service without supervision, make change, shop at the store independently, walk, and ride an exercise bike." (AR 17.)

Plaintiff does not dispute these activities, which he described in his reports to providers and at the hearing. (*See* AR 36–37, 42, 449, 459.)  Instead, Plaintiff criticizes the ALJ for not specifying how his activities are inconsistent with his migraine headache testimony.  (Doc. 12 at 15; *see also* Doc. 15 at 2–3.)  However, no greater level of specificity is warranted in this case.  In *Ferguson v. O'Malley*, 95 F.4th 1194 (9th Cir. 2024), on which Plaintiff primarily relies, the ALJ "did not explain

how, in his view, [the claimant's] testimony about [his] daily activities is inconsistent with his testimony about the severity and frequency of his headaches . . . . [a]nd no reasonable inference that such an inconsistency exists." *Id*. at 1200.  Unlike *Ferguson*, it can be reasonably inferred here that Plaintiff's performance of regular daily activities, such as bathing, cooking, using transportation, and shopping, is, on its face, inconsistent with his allegation that he is "unable to do anything" for three to five days for up to seven times per month.  *See Anderson v. Dudek*, No. 24-1266, 2025 WL 972975, at *1 (9th Cir. Apr. 1, 2025) ("Anderson running and working 15 to 20 hours per week was inconsistent with her testimony that her headache symptoms were so bad that she was 'in bed for about half of every week.'  And Anderson working up to 20 hours per week was inconsistent with her testimony that her headaches rose to a migraine level, which rendered her incapable of working, three times or more per week.  By citing these specific facts, the ALJ demonstrated that Anderson was in less pain than she claimed and properly rejected the severity of her headache testimony.") (internal citations omitted).  *See also Kaufman v. Kijakazi*, 32 F.4th 843, 851–52 (9th Cir. 2022) ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."); *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (the plaintiff's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" provided "substantial evidence" to support the ALJ's decision.); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping").

Given the inconsistency between his daily activities and his allegations of total disability caused by migraines, as specifically identified by the ALJ, the Court finds that the ALJ's analysis of Plaintiff's subjective statements and testimony is supported by proper legal analysis and substantial evidence.

b.       Medical evidence

Next, the ALJ considered the extent to which Plaintiff's allegations were supported by the medical evidence.  (AR 17–22.)  While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch*, 400 F.3d at 680, 681.  *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999).  And, when medical evidence in the record is "***inconsistent*** with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original) (collecting cases); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Here, the ALJ observed that despite Plaintiff's alleged inability to work due to migraine headaches, Plaintiff's brain MRI scan was normal, that the consultative examiner found his symptomology "not terribly consistent with migraines," and that his neurological examinations were "largely unremarkable with no tremors, dysmetria or ataxia; no focal weakness in extremities; no involuntary movements; intact cranial nerves; no nystagmus; [and] no facial asymmetry." (AR 18, 19, 21.)  In addition, the ALJ pointed to several instances in the record where Plaintiff gave reasons for not working that were unrelated to his alleged disability (*See* AR 18 (Plaintiff "continued to make arguments as to why he could not hold any kind of work including working from home (lack of transportation, computer, prior experience) (citing AR 508); AR 21 ("[W]hen the therapist asked [Plaintiff] . . . why he was unable to work now, he replied lack of training or experience, lack of transportation, no home (he was living with his brother).") (citing AR 588)).  *See Cox v. Berryhill*, No. 16-CV0306-BAM, 2017 WL 3172984, at *4 (E.D. Cal. July 26, 2017) ("[W]hen considering a claimant's contention that he cannot work because of his impairments, it is appropriate for the ALJ to consider whether the claimant has not worked for reasons unrelated to his alleged disability.") (citing *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job because he was laid off, rather than because he was injured, was a clear and convincing reason to

find him not credible)).

As before, Plaintiff does not dispute this evidence, which is supported by the record.  (*See* AR 412, 462, 508, 546, 554, 566, 588.)  Instead, he again asserts that the ALJ did not identify any contradiction between the evidence and his headache allegations, citing *Ferguson* (again) and *Laborin v. Berryhill*, 867 F. 3d 1151, 1155 (9th Cir. 2017). (Doc. 12 at 16–17; Doc. 15 at 3.)  The cases are inapposite.  In *Laborin*, the Ninth Circuit reviewed a case where the ALJ discredited the claimant's testimony "regarding the intensity, persistence, and limiting effects of his symptoms to the extent that testimony was 'inconsistent with the above residual functional capacity assessment.'" 867 F.3d 1151, 1152 (9th Cir. 2017).  There, the Ninth Circuit found that the boilerplate language was insufficient to provide specific, clear and convincing reasons for discrediting the claimant's testimony.  *Id*. at 1154–1155.

However, *Laborin* (and *Ferguson*) are distinguishable as the ALJ here relied on more than boilerplate language or non-specific conclusions to discredit Plaintiff's testimony.  In its decision, the ALJ identified Plaintiff's testimony regarding his inability "to do anything" for three to five days for up to seven times per month due to migraines, and supported their finding that such testimony was "not entirely consistent" with the medical evidence by noting the normal objective testing, consultative examiner's findings that Plaintiff's symptoms were "not terribly consistent" with migraines, normal examination results, and Plaintiff's statements regarding his reasons for not working unrelated to alleged disability.  *See* TITLES II & XVI: EVALUATING CASES INVOLVING PRIMARY HEADACHE DISORDER, Social Security Ruling ("SSR") 19-4p (S.S.A. August 26, 2019) (In cases where migraine and migraine symptoms are alleged, "[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC.").  To the extent that Plaintiff advocates for a more favorable interpretation of this evidence (*see* Doc. 15 at 4), it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to him.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

Unlike the cases cited by Plaintiff, the ALJ here did not simply rely on broad boilerplate

13

language discrediting any testimony inconsistent with the ALJ's RFC assessment.  While the ALJ did not perform a line-by-line exegesis of Plaintiff's testimony, *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020), they discussed how the migraine symptoms and limitations alleged by Plaintiff were not supported by the record.  *See Guthrie v. Kijakazi,* No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) *(*the ALJ sufficiently explained her reasons for discounting the plaintiff's symptom testimony, and "we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufman*, 32 F. 4th at 851); *Cooper v. Kijakazi*, No. 20-15935, 2022 WL 1553170, at *1 (9th Cir. May 17, 2022) (finding no error where the ALJ summarized the plaintiff's "relevant testimony concerning her key asserted limitations," "stated that he found 'these statements of extremely limited physical capacity inconsistent with the overall record,'" and then "explained the specific reasons upon which that conclusion was based."); *Young v. Saul*, 845 F. App'x 518, 519–20 (9th Cir. 2021) ("The ALJ specifically cited Young's written statements and testimony as among the items he had "carefully consider[ed]," and he gave specific reasons why he did not credit Young's claims concerning the 'limiting effects' of Young's symptoms . . . .  The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony.").  *See also Smartt*, 53 F.4th at 499 ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."); *Razaqi v. Kijakaz*i, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5 (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity.  No inferential leaps are required to find the ALJ's reasoning clear and convincing."); *cf. Brown-Hunter*, 806 F.3d at 495 (finding error where the ALJ stated only a general, nonspecific finding regarding credibility after simply reciting the medical evidence).  The Court therefore finds the ALJ's conclusion that the evidentiary record does not support, and instead undermines, Plaintiff's subjective statements regarding his migraine headaches is supported by substantial evidence.  The ALJ's determination that Plaintiff's complaints are inconsistent with the medical evidence is therefore another clear and convincing reason for discounting his subjective symptom testimony.  *See Smartt,* 53 F.4th at 499 (concluding that the ALJ properly discredited the claimant's testimony based on inconsistencies with objective medical evidence).

In sum, the Court finds that the ALJ provided at least two clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the severity of his headache allegations.[5]

## V.    CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:    __**June 16, 2026**__                    ____/s/ *Sheila K. Oberto*____
                                                    UNITED STATES MAGISTRATE JUDGE

---

[5] While it is not clear that the ALJ intended to discredit Plaintiff's migraine headache testimony due to lack of evidence of "severe diffuse severe disuse muscle atrophy or loss of muscle tone, bulk, mass or strength" (AR 17) or receipt of only "intermittent treatment" (AR 21), the Court agrees with Plaintiff that, if they had, these notations would not be supported by substantial evidence. (*See* Doc. 12 at 17–18; Doc. 15 at 4–5.)  Any error would be harmless, however, as the Court has found the ALJ provided other clear and convincing reasons, based on other evidence, for discrediting his subjective complaints (*see infra*).  *See Reyes v. Berryhill*, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for discounting claimant's testimony, "[a]ny error in other reasons provided by the ALJ was harmless"); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *Williams v. Comm'r, Soc. Sec. Admin.*, Civ. No. 6:16–cv–01543–MC, 2018 WL 1709505, *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall . . . determination.").

15